***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer.
3. St. Paul Travelers is the carrier on the risk.
4. Plaintiff's average weekly wage for defendant-employer was $140.00 per week.
5. Plaintiff sustained a compensable injury on or about July 16, 2006 that arose out of and in the course of his employment with defendant-employer.
 * * * * * * * * * * * ISSUES PRESENTED
1. Whether plaintiff is entitled to laser surgery as a result of his compensable injury;
2. Whether plaintiff is entitled to reimbursement for medical travel expenses incurred by his parents incurred as a result of his compensable injury; and
3. Whether plaintiff is entitled to workers' compensation benefits for his disfigurement incurred as a result of his compensable injury.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On July 16, 2006 plaintiff sustained an admittedly compensable injury while working as a dishwasher for defendant-employer when a co-worker near plaintiff dropped a vat containing 3½ gallons of 375° grease. Plaintiff was wearing shorts at the time and grease initially splashed on plaintiff. Then, as plaintiff tried to avoid the container, which stayed *Page 3 
upright after it hit the floor, he stepped into the vat full of scalding grease with his right foot. Plaintiff was 18 years old at the time of this accident.
2. Plaintiff was treated at Caldwell Memorial Hospital for two days and was then transferred to the burn unit at North Carolina Baptist Hospital, where he was treated from July 18 through 28, 2006. Upon his admission to North Carolina Baptist Hospital, it was noted that plaintiff had burns on 12% of his total body surface.
3. On July 27, 2006 plaintiff underwent skin graft surgery, placing 175 square centimeters of skin on his right ankle from a donor graft taken from his right thigh.
4. This injury has resulted in permanent repulsive scarring to the skin of plaintiff's lower extremities, including to the inside and backs of his thighs, to the right thigh donor graft area, to the backs of both calves, to the left ankle to sock line, and to the right ankle to three inches above the sock line.
5. Plaintiff seldom wears shorts because of the scars. When he has worn shorts, people have asked plaintiff about the scarring. Plaintiff's scarring bothers him during his current employment as an electrician in that the scarred areas itch often and are especially sensitive to heat and cold.
6. While plaintiff was being treated at Baptist Hospital, the medical staff taught plaintiff's mother how to change plaintiff's dressings and how to stretch the scars. Plaintiff's mother also assisted in bathing plaintiff and helped plaintiff through his physical therapy. Plaintiff's mother was at the hospital assisting every day from July 18 through 28, 2006. For example, plaintiff had extreme difficulty walking while he was in the hospital due to his injuries. It sometimes took plaintiff a full hour, with his mother's assistance, to walk down the hall. Plaintiff's mother provided necessary services to plaintiff through the recuperative and *Page 4 
rehabilitative process. Plaintiff's father brought clothing and completed other tasks every day to enable plaintiff's mother to spend time at the hospital.
7. During his deposition, Dr. Molnar testified that it was important medically for plaintiff's parents to travel to and from the hospital during plaintiff's hospital stay.
8. Concerning plaintiff's parents, in his August 29, 2007 letter, Dr. James C. Johnson wrote "[t]heir presence was valuable to [plaintiff's] initial hospitalization as they assisted [plaintiff] with activities of daily living."
9. Plaintiff's parents incurred 18 round trips to Baptist Hospital at 163.74 miles per round trip. This is a total of 2,947.32 miles. All of these trips were medically necessary. The North Carolina Industrial Commission medical mileage reimbursement rate for that period of 2006 was $0.445 per mile. The mileage therefore has a reimbursement value of $1,311.56.
10. Plaintiff was released from the hospital earlier than he otherwise would have been because plaintiff's mother had been trained in how to change dressings and otherwise care for plaintiff. Furthermore, subsequent to his release, defendants did not have to pay for nurses to be sent to plaintiff to provide services that plaintiff's mother was able to perform as a result of her attendance during plaintiff's hospital stay.
11. Dr. Joseph A. Molnar wrote defendants a September 7, 2007 letter recommending that plaintiff undergo the pulse dye laser treatment. Dr. Molnar stressed that this procedure was "reconstructive and restorative" in nature and that it would help plaintiff's pain and itching. Defendants refused to provide the treatment.
12. During his deposition testimony on March 14, 2008, Dr. Molnar again recommended the pulse dye laser treatment for plaintiff. Specifically, Dr. Molnar stated that the *Page 5 
laser treatment "seems like it helps everybody" and further that "[many patients] have been very surprised that it has helped them with the itching and aching that they were having."
13. Notwithstanding any future laser treatment, plaintiff has suffered repulsive permanent scarring.
14. The Full Commission finds that defendants pursued this appeal, in particular the issue of laser treatment, without reasonable ground.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 16, 2006 plaintiff sustained a compensable injury by accident when he was splashed by and subsequently stepped into a vat of scalding grease. N.C. Gen. Stat. § 97-2(6).
2. Subject to N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to the payment of his medical expenses incurred as a result of the compensable injury for so long as such examinations, evaluations, and treatments effect a cure, give relief, or lessen the period of disability. This treatment shall include, but is not limited to, the laser surgery recommended by Dr. Molnar. N.C. Gen. Stat. §§ 97-25, 97-31(22). For compensation under N.C. Gen. Stat. § 97-31(22), the disfigurement must be of such a nature that it may be fairly presumed that the injured employee has suffered a diminution of his future earning power. Liles v.Charles Lee Byrd Logging Co.,309 N.C. 150, 305 S.E.2d 523 (1983). When scarring is sufficiently severe that it may be considered repulsive, this presumption is satisfied, even when the disfigurement would ordinarily be hidden.Blackwell v. Multi Foods Management, Inc.,126 N.C. App. 189, 484 S.E.2d 815 *Page 6 
(1997). The Blackwell decision is especially instructive in this matter given its strikingly similar fact pattern.
3. As part of these expenses, plaintiff is also entitled to reimbursement for his parents' medical travel in the amount of $1,311.56. N.C. Gen. Stat. §§ 97-2(19); 97-25; North Carolina Workers' Compensation Rule 407(6).
4. The burns plaintiff suffered during the compensable accident resulted in repulsive and permanent scars to plaintiff's lower extremities. The Industrial Commission may award proper and equitable compensation for plaintiff's serious bodily disfigurement. N.C. Gen. Stat.
5. Due to the repulsive scars and discolorations caused by the compensable accident, plaintiff may be entitled to permanent partial disability compensation for his serious bodily disfigurement. However, because the Full Commission has found plaintiff would benefit from laser surgery to address his scarring, the Commission deems it proper to hold in abeyance an award pursuant to N.C. Gen. Stat. § 97-31(22), until the laser surgery has been performed and until any applicable healing time has passed.Id.
6. While the skin is an important organ of the body and portions of plaintiff's skin have been permanently damaged, N.C. Gen. Stat. § 97-31(24) is not applicable in this case as it provides for compensation when "no compensation is payable under any other subdivision of [N.C. Gen. Stat. § 97-31]," which is not the case in this instance. N.C. Gen. Stat. §§ 97-31(22); 97-31(24).
7. The Full Commission concludes that defendants pursued this appeal, in particular the issue of laser treatment, without reasonable ground, and further concludes an award of $5,000.00 in attorney's fees to be proper. N.C. Gen. Stat. § 97-88.1.
 *********** *Page 7 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to N.C. Gen. Stat. § 97-25.1, defendants shall pay all medical expenses incurred by plaintiff as a result of the compensable injury for so long as such examinations, evaluations, and treatments effect a cure, give relief, or lessen the period of disability. This treatment shall include, but is not limited to, the laser surgery recommended by Dr. Molnar.
2. Defendants shall pay plaintiff medical travel reimbursement for plaintiff's parents' travel in the amount of $1,311.56.
3. Plaintiff may be entitled to permanent partial disability compensation for his serious bodily disfigurement. However, because the Full Commission has found plaintiff would benefit from laser surgery to address his scarring, the Commission deems it proper to hold in abeyance an award pursuant to N.C. Gen. Stat. § 97-31(22), until the laser surgery has been performed and until any applicable healing time has passed. For this reason, jurisdiction in this matter is hereby remanded to Deputy Commissioner Gillen for the purpose of viewing the plaintiff after the laser surgery and making an award of permanent partial disability compensation at the appropriate time.
4. Pursuant to N.C. Gen. Stat. § 97-88.1, defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of $5,000.00. This fee shall be taxed as a cost to defendants and shall not be deducted from any compensation due to plaintiff.
5. Defendants shall pay the costs.
This __ day of May 2009. *Page 8 
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1